UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM WALTER PLISE, ) | |
| ) | |
| Appellant, ) | Case No.: 2:14-cv-00186-GMN |
| vs. ) | |
| ) | **ORDER** |
| SHELLEY D. KROHN, CHAPTER 7 ) | |
| TRUSTEE, ) | |
| ) | |
| Appellee. ) | |
| ) | |

In this bankruptcy appeal, Appellant William Walter Plise ("Debtor") seeks review under 28 U.S.C. § 158(c)(1) of an order of the United States Bankruptcy Court for the District of Nevada ("the Bankruptcy Court"), granting a Motion for Partial Summary Judgment filed by Appellee Shelley D. Krohn ("Trustee"). Debtor asks the Court to reverse the Bankruptcy Court's Order and Partial Judgment. For the reasons explained below, the Bankruptcy Court's Order and Judgment is affirmed.

**I.   BACKGROUND**

Debtor was a contractor who, through various corporations and limited liability companies, developed several large real estate projects in the Las Vegas area, including a $2 billion 126-acre mixed use development known as the City Crossing Project. (Decl. of Debtor ¶ 3, ER 741–51, ECF No. 7-7). In late 2008 and early 2009, however, Debtor's ability to obtain financing for the City Crossing Project dissipated and the project stalled, ultimately resulting in the various entities involved in the City Crossing Project filing Chapter 11 bankruptcy. (*Id.*). Following this bankruptcy, the holders of approximately $100 million of the unsatisfied debt from the City Crossing Project sought collection of the debt from Debtor individually. (*Id.*). This collection effort precipitated the filing of the present Chapter 7 bankruptcy on April 23,

2012. (*Id.*; Bky. Filing, Bky. Dckt. No. 1).

On February 23, 2009, just over three years prior to the Chapter 7 bankruptcy filing, Debtor had formed 5550 Las Vegas LLC ("5550 LV") by filing Articles of Organization with the Nevada Secretary of State. (Decl. of Trustee ¶ 32, AER 112–128, ECF No. 8-2; 5550 Las Vegas Operating Agreement, AER 383–94, ECF No. 8-5). Under the Articles of Organization, Debtor was the sole member and officer of 5550 LV. (Decl. of Trustee ¶ 32, AER 112–128, ECF No. 8-2). On the same day 5550 LV was created, Debtor also opened a bank account in the name of 5550 LV at Service First Bank of Nevada with Debtor as the sole signatory for the account. (*Id.* ¶ 33). Seventeen months later on July 12, 2010, Debtor transferred his membership interest in 5550 LV to Michael Halverson. (*Id.* ¶ 34). However, even after the transfer, Debtor remained the sole signatory for the 5550 LV account, and from the time the 5550 LV account was open until Debtor filed bankruptcy on April 23, 2012, Debtor used the 5550 LV account to pay his personal expenses, including rent, utilities, and insurance. (*Id.* ¶¶ 34–35).

On May 7, 2012, Debtor—through his then counsel Jon Field[1]—filed the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs. (Schedules and Statements, Bky. Dckt. No. 15-31). At the same time, Debtor also filed a Declaration Concerning the Debtor's Schedules, stating under penalty of perjury that the information contained in the Schedules and Statements was accurate. (Decl. Concerning Schedules, Bky. Dckt. No. 31). However, in his Schedule B, Debtor only lists his personal assets as: a checking account ($988.71), a personal safe and computer ($250.00), assorted clothing ($250.00), a wedding ring and watch ($1,000.00), a 9mm Glock Pistol ($250.00), and an eighteen foot trailer ($2,000.00). (Schedule B, Bky. Dckt. No. 17). Debtor's Schedule B does not identity

---

[1] According to Debtor, Jon Field was the former in-house counsel for one of his companies with limited experience with bankruptcy law. (Decl. of Debtor ¶ 4, ER 741–51, ECF No. 7-7).

any interest held by Debtor in the 5550 LV account. (Decl. of Trustee ¶ 41, AER 112–128, ECF No. 8-2). Furthermore, Debtor's original Statement of Financial Affairs, which requires disclosure of information concerning "all businesses" in which Debtor was an officer, director, partner, or managing executive within six years immediately proceeding the commencement of bankruptcy, does not identify Debtor's prior membership interest in 5550 LV. (*Id.* ¶ 43; Statement of Financial Affairs, Bky. Dckt. No. 27).

On May 9, 2012, Debtor filed a Revised Statement of Financial Affairs that also fails to identify Debtor's prior membership interest in 5550 LV. (*Id.* ¶ 44; Rev. Statement of Financial Affairs, Bky. Dckt. No. 32). Thirteen days later on May 22, 2012, Mitchell Stipp, the former Chief Operating Officer for one of Debtor's companies and an agent for Debtor sent an email to proposed counsel[2] for Debtor that reads as follows:

> I [Stipp] have discussed the matter with [Debtor], and he does not want you to provide any information to the bankruptcy trustee regarding the account in the name of 5550 Las Vegas, LLC. At this point, you should not be providing any information or answering any questions other than what I authorize you to provide/answer about this account. This account does not belong to [Debtor] personally (although he is the only signatory on the account), and he is still working with Mr. Halverson on obtaining his consent to disclose the statements to the bankruptcy trustee. As I [Stipp] understand it, there are transactions involving Mr. Halverson that Mr. Halverson (personally) may not want disclosed.
>
> Attached are the bank statements for 5550 Las Vegas, LLC. These statements are for the 12 months prior to [Debtor's] bankruptcy petition. YOU DO NOT HAVE AUTHORITY TO RELEASE THESE TO THE BANKRUPTCY TRUSTEE. I am providing them to you for your review ONLY and subject to [Debtor's] consent (which he may not provide) to release them to the bankruptcy trustee.
>
> The account was opened on approximately 2.27.09. [Debtor] has been the only signatory on the account since its opening.

---

[2] The Debtor agreed to waive the attorney-client privilege regarding this email in a letter dated April 8, 2013. (Waiver, AER 399, ECF No. 8-5).

(Stipp Email, AER 400, ECF No. 8-5; Decl. of Trustee ¶ 45, AER 112–128, ECF No. 8-2). Debtor subsequently amended his Statement of Financial Affairs on November 21, 2012 and again failed to identify his prior membership interest in 5550 LV. (Decl. of Trustee ¶ 46, AER 112–128, ECF No. 8-2; Second Am. Statement of Financial Affairs, Bky. Dckt. No. 235). Finally, on December 20, 2012, Debtor again amended his Statement of Financial Affairs and for the first time listed his prior membership interest in 5550 LV. (Decl. of Trustee ¶ 47, AER 112–128, ECF No. 8-2; Third Am. Statement of Financial Affairs, Bky. Dckt. No. 291).

On September 9, 2012, the Trustee commenced an adversary proceeding seeking to deny the Debtor a discharge in bankruptcy. (Decl. of Trustee ¶ 55, AER 112–128, ECF No. 8-2). On July 19, 2013, Trustee filed a Motion for Partial Summary Judgment in the adversary proceeding seeking to deny Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) based, *inter alia*, upon Debtor's failure to identify his interest in 5550 LV. (PMSJ, AER 59–93, ECF No. 8-1). On October 22, 2013, the Bankruptcy Court granted the motion based upon Debtor's failure to identify his interest in 5550 LV. (Bky. Order, Ex. 1 to Notice of Appeal 3–8, ECF No. 1).

Debtor appealed the Bankruptcy Court's Order to this Court on February 3, 2014, (Notice of Appeal, ECF No. 1), and subsequently filed his Opening Brief (ECF No. 7). Trustee filed her Answering Brief (ECF No. 8) and Debtor filed a Reply Brief (ECF No. 13). Debtor later filed a Supplement (ECF No. 14).

**II.    STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 158(a) and (b), federal district courts and bankruptcy appellate panels, where applicable, have jurisdiction to hear appeals from final judgments of bankruptcy judges. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "Findings of fact, whether based on oral or documentary

evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id*.

However, an order granting a motion for summary judgment is reviewed *de novo*. *In re Raintree Healthcare Corp.*, 431 F.3d 685, 686 (9th Cir. 2005); *see also In re Kaypro*, 218 F.3d 1070, 1073 (9th Cir. 2000) ("The rulings on the parties' motions for partial summary judgment are reviewed *de novo*."). "Summary judgment is to be granted if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). The reviewing court must determine whether any genuine issue of material fact exists, and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir. 1989).

### III.   DISCUSSION

In his opening brief, Debtor presents six issues on appeal, which are properly compressed into one issue: did the Bankruptcy Court err in finding as a matter of law that Debtor knowingly and fraudulently made a false oath or account by failing to disclose his interest in 5550 LV on either his Schedule B or his Statement of Financial Affairs. For the reasons discussed below, the Court finds that the Bankruptcy Court did not err in its ruling.

11 U.S.C. § 727(a)(4)(A) provides: "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ." In order to deny a debtor a discharge under section 727(a)(4)(A) based upon a false statement or omission, the plaintiff must prove that "(1) Debtor made such a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently." *In re Khalil*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007) *aff'd*, 578 F.3d 1167 (9th Cir. 2009).

Debtor does not dispute that his failure to identify his interest in 5550 LV was a false omission or that it was material.  Instead, his appeal rests entirely upon the argument that there is at least a genuine issue of material fact that he did not knowingly and fraudulently make this omission. (Opening Brief 10:16–19:8, ECF No. 7).  In support of this argument, Debtor cites numerous courts that have noted the high barrier for finding on summary judgment that a debtor "knowingly and fraudulently" omitted a material fact because, in ruling on summary judgment, the court must resolve factual issues such as intent with all reasonable inferences drawn in favor of the nonmoving party. *See, e.g.*, *In re Stephens*, 51 B.R. 591, 594 (9th Cir. BAP 1985) ("Summary judgment is not to be granted lightly and is not a substitute for the trial of disputed issues of fact.  Fraud claims, in particular, normally are so attended by factual issues (including those related to intent) that summary judgment is seldom possible.") (internal citations omitted); *In re Swegan*, 383 B.R. 646 (6th Cir. BAP 2008) (reversing a bankruptcy court's granting of summary judgment for false oath because the debtor's explanation, in a "self-serving affidavit," that he was "confused" at his examination, although "difficult to believe," created a genuine issue with regard to his intent); *see also Provenz, v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) ("Cases where intent is a primary issue generally are inappropriate for summary judgment unless *all* reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim.").  Debtor then provides several explanations for his omissions that he contends creates a genuine issue of fact concerning whether he knowingly and fraudulently or merely negligently omitted his interest in 5550 LV from his disclosures. (Opening Brief 9:3–10:14, ECF No. 7).

Debtor is correct that summary judgment is often inappropriate for claims requiring knowledge or fraudulent intent. *See Stephens*, 51 B.R. at 594.  However, "[a] denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it; and if so, there is no occasion to submit the issue of knowledge

to determination at a trial." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998); *see also In re Eigsti*, 323 B.R. 778, 785 (Bankr. M.D. Fla. 2005) ("Summary judgment is appropriate in cases in which fraudulent intent is proven by a pattern of concealment or reckless indifference to the truth."). Furthermore, "[f]raudulent intent may be determined by circumstantial evidence." *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990) (affirming summary judgment for creditor on § 727(a)(4)(A) claim where the creditor has "presented evidence casting serious doubt on the existence of the scheduled [fictitious] debt . . . and [the debtor] has not responded with any credible evidence to substantiate the debt.").

Here, the circumstantial evidence overwhelmingly supports a finding that Debtor knowingly and fraudulently failed to list his interest in 5550 LV and all of Debtor's proffered reasons for his omission are either illogical or utterly implausible. Trustee has presented irrefutable evidence showing that Debtor failed to disclose his control of the 5550 LV bank account or prior membership interest in 5550 LV for approximately eight months from his filing date despite making several amendments to his disclosures during that time. (Schedule B, Bky. Dckt. No. 17; Schedules and Statements, Bky. Dckt. No. 15-31). Furthermore, during the eight month interim before Debtor disclosed his interest in 5550 LV, a former COO of one of Debtor's companies—whom Debtor does not dispute was his agent—sent an email to proposed counsel for Debtor telling him about the interest in 5550 LV and instructing him in no uncertain terms that Debtor "does not want [proposed counsel] to provide any information to the bankruptcy trustee regarding the account in the name of 5550 Las Vegas LLC." (Stipp Email, AER 400, ECF No. 8-5). Moreover, several months after the date of this email, Debtor again amended his Statement of Financial Affairs and did not disclose his interest in 5550 LV. (Second Am. Statement of Financial Affairs, Bky. Dckt. No. 235). This evidence clearly shows an intent on the part of Debtor to hide the existence of a bank account over which he alone had personal control and which he used up to the filing date to pay his own personal expenses by

consciously failing to disclose the existence of this account or his prior interest in the company whose name was on the account. *See Friedman v. Alfonso (In re Alfonso)*, 94 B.R. 777, 778 (Bankr. S.D. FL. 1988). ("[A] debtor's failure to promptly amend the schedules is considered a reckless indifference to the trust which is the equivalent of fraud."); *see also Aubrey*, 111 B.R. at 273 ("It is clearly unsatisfactory to grant the debtor a discharge in a case such as this, where the debtor 'stonewalls' the creditor and refuses to credibly explain to the court his puzzling or suspect transactions.") (quoting *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 888 (7th Cir. 1983)).

Regarding his failure to disclose his interest in 5550 LV on his Schedule B, Debtor contends that he did not believe he needed to disclose this interest because: (1) he had already sold his membership interest, (2) a search of business entities on the Secretary of State's website under the name William Plise does not result in any reference to 5550 LV, and (3) 5550 LV "never had a material value and its account was used to transfer funds and cash checks." (Opening Brief 9:3–9:22, ECF No. 7).  All of these explanations, however, are completely illogical and do not show a plausible reason for Debtor's failure to disclose his control over the 5550 LV bank account.  First, the Schedule B requires disclosure of personal property, including "property [that] is being held for the debtor by someone else . . . ." (Schedule B, Bky. Dckt. No. 17).  The fact that Debtor transferred his membership in 5550 LV does not have any bearing on whether an account in the name of 5550 LV over which Debtor maintained exclusive control and from which he freely paid his own personal expenses was his personal property. *See* BLACK'S LAW DICTIONARY 1335 (9th ed. 2009) (defining "property" as: "1. The right to possess, use, and enjoy a determinate thing").  Furthermore, while an inference in favor of Debtor could be drawn concerning his confusion over whether to treat the account as property of 5550 LV rather than his own, this inference is contradicted by Debtor's third explanation that 5550 LV held no value because the company existed solely for the purpose of

holding an account from which Debtor could pay his personal expenses. Moreover, as will discussed more in the next paragraph, Debtor's treatment of this account as part of the business of 5550 LV also contradicts his explanation for failing to disclose his membership in 5550 LV on the Statement of Financial Affairs because the company did not "conduct any business." Debtor cannot have it both ways by treating 5550 LV and its account as a business he previously held an ownership interest in but not as personal property for his Schedule B but as a personal piggy bank and not an actual business on his Statement of Financial Affairs. Additionally, the fact that a website search of Debtor's name does not bring up 5550 LV does not in any way create an inference that Debtor might reasonably believe he does not need to disclose his property held in the 5550 LV account.[3] Finally, it is utterly implausible that Debtor believed that because 5550 LV existed solely for the purpose of Debtor's personal use of its account that he did not need to include the account as a personal asset on his Schedule B. This assertion strengthens rather than undermines the fact that Debtor knew the account should be disclosed on the Schedule B.

Regarding his failure to disclose his interest in 5550 LV on his initial Statements of Financial Affairs, Debtor contends that he did not believe he needed to disclose this interest because: (1) his membership in 5550 LV had been sold almost two years before his bankruptcy, (2) 5550 LV never "conducted any business," (3) a search of business entities on the Secretary of State's website under the name William Plise does not result in any reference to 5550 LV, and (4) he was relying on the advice of his former counsel Jon Field for the proper preparation of the statement. (Opening Brief 9:24–10:14, ECF No. 7). First, the fact that Debtor sold an interest in a company two years before filing bankruptcy in no way explains why he would not

---

[3] If any inference can be drawn at all from the fact that Debtor's interest in 5550 LV does not come up in a search of the Secretary of State's website, it is that Debtor believed he could get away with hiding his interest in the company and the existence of its account.

need to disclose that interest in a form requiring disclosure of all interests in businesses held within the six years preceding the filing.[4]  Likewise, the fact that a prior interest in a business does not come up in a search of current business interests does not create any plausible basis for deciding that the prior interest does not need to be disclosed.  Furthermore, it strains credulity that Debtor legitimately believed he did not need to disclose his prior interest as the sole member and officer of 5550 LV because that company did not "conduct[] any business" when the Statement of Financial Affairs requires disclosure of information concerning "all businesses in which debtor was an officer, director, partner, or managing executive of a corporation [or] partner in a partnership . . . ." (Statement of Financial Affairs, Bky. Dckt. No. 27); see *In re King*, 272 B.R. 281, 300 (Bankr. N.D. Okla. 2002) ("[A] debtor may not escape a § 727(a)(4)(A) charge by asserting that the omitted information concerned a worthless business relationship or holding.").  Moreover, even if this explanation was plausible on its face, Debtor's failure to list 5550 LV's bank account as a personal asset on his Schedule B because it was held by 5550 LV implicitly contradicts this assertion.  Again, it is utterly implausible that in filling out the Schedule B Debtor honestly thought of the 5550 LV account as a business account owned by 5550 LV yet when filling out his Statement of Financial Affairs he thought of 5550 LV as merely an empty vehicle through which he operated a personal account.

Turning to Debtor's final explanation, "[g]enerally, a debtor acting in reliance on the advice of counsel lacks the intent required to be denied a discharge.  Any such reliance must be in good faith, however." *In re Jackson*, 141 B.R. 702, 706 (Bankr. D. Ariz. 1992) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986)).  It is plausible that in relying on incorrect advice of his inexperienced legal counsel Debtor did not knowingly and

---

[4] To the extent Debtor is trying to implicitly argue that he merely forgot about his interest in 5550 LV because he gave it up two years ago, this argument is utterly implausible in light of his continued use of the 5550 LV bank account right up until the filing date and Stipp's email sent during the bankruptcy instructing proposed counsel on behalf of Debtor not to disclose Debtor's interest in 5550 LV.

fraudulently omit his interest in 5550 LV on his initial Statement of Financial Affairs.  What is implausible, however, is that the omission was the result of poor legal advice from Jon Field, yet Debtor failed to amend his Statement of Financial Affairs to include 5550 LV until December 20, 2012, four months after Field withdrew as his counsel on August 6, 2012, (Order on Mot. to Withdraw, Bky. Dckt. No. 71), and two months after the appearance of Debtor's current counsel on October 26, 2012. (Schwartzer Notice of Appearance, Bky. Dckt. No. 197). Blaming this delay in amending the Statement of Financial Affairs on Field is made all the more implausible by the facts that Debtor amended his Statement of Financial Affairs following the termination of Field's representation on November 21, 2012 but continued to omit his interest in 5550 LV (Second Am. Statement of Financial Affairs, Bky. Dckt. No. 235), and that Debtor was specifically pointing out his interest in 5550 LV to proposed counsel he was seeking to hire to replace Field while instructing said counsel not to disclose the interest. (Stipp Email, AER 400, ECF No. 8-5).  "[A] debtor's failure to promptly amend the schedules is considered a reckless indifference to the trust which is the equivalent of fraud." *Friedman*, 94 B.R. 777, 778 (Bankr. S.D. FL. 1988); *see also In re Totten*, No. 12-00332, 2014 WL 690616, at *6 (Bankr. D. Haw. Feb. 20, 2014) ("A debtor must correct such documents filed with the court upon learning of their inaccuracy or incompleteness.") (citing *In re Mohring*, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992) *aff'd*, 153 B.R. 601 (B.A.P. 9th Cir. 1993) *aff'd*, 24 F.3d 247 (9th Cir. 1994)).  While it may be plausible that Debtor's initial failure to disclose his prior interest in 5550 LV was the result of his former counsel's ineptitude, it is utterly implausible that his long delay in amending his Statement of Financial Affairs was anything but a knowing and fraudulent omission.

Accordingly, all of Debtor's proffered reasons why he did not knowingly and fraudulently fail to disclose his interest in 5550 LV are utterly implausible.  Therefore, in light of the irrefutable evidence that Debtor intentionally withheld his interest in 5550 LV from the

Trustee, no rational person could believe that Debtor did not act with the requisite intent, and it was not error for the Bankruptcy Court to grant Trustee summary judgment on the § 727(a)(4)(A) claim.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the order of the United States Bankruptcy Court for the District of Nevada is **AFFIRMED**.

**DATED** this 19th day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge